**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**OMAR KHAYYAM HUMPHREY**                                          **PETITIONER**

**V.**                                     **CIVIL ACTION NO.:  3:15CV137-SA-JMV**

**JACQUELYN BANKS and
ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI**          **RESPONDENTS**

**MEMORANDUM OPINION AND ORDER**

Petitioner, Omar Khayyam Humphrey, Mississippi prisoner no. R3755, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254, seeking to challenge his State court conviction and sentence for capital murder.  Having considered the submission of the parties, the State court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be dismissed pursuant to 28 U.S.C. § 2244(b), for the reasons that follow.

**Factual and Procedural History**

Following a jury trial in the Circuit Court of Tate County, Mississippi, Omar Humphrey was convicted of the October 31, 1996, capital murder of Senatobia, Mississippi, resident Virginia Phillips and was sentenced to serve a life term without the possibility of parole in the custody of the Mississippi Department of Corrections.  *See* ECF No. 16-5 at 193-94.  Petitioner's appeal and initial state and federal applications were thereafter denied.  *See Humphrey v. State*, 759 So. 2d 368 (Miss. 2000) (No. 98-KA-00372-SCT) (appeal); ECF No. 15-2 (No. 2003-M-844) (post-conviction); ECF No. 15-3 (No. 2003-M-844) (post-conviction);  ECF No. 15-8 (No. 2005-M-123) (post-conviction);  ECF No. 15-9  (No. 2005-M-123) (mandamus); ECF No. 15-5 (No. 2:04-CV-00217-WAP) (denial of habeas relief); ECF No. 15-6 (No. 05-60145) (denial of certificate of appealability); ECF No. 15-7 (No. 05-8122) (denial of petition for writ of

certiorari).

In December 2009, Petitioner submitted a *pro se* application for post-conviction relief in the Mississippi Supreme Court, alleging, in part, that he had newly discovered evidence that a state witness who testified against Humphrey - Patrick Reed[1] - had fabricated his trial testimony and previous statements to law enforcement. *See* ECF No. 16-3 at 56-75. By way of relevant background, the Court notes that Patrick Reed was jailed with Omar Humphrey in December 1996. According to Reed, Humphrey made statements to Reed implicating himself in the murder of Mrs. Phillips while they were housed in the same cell. Reed reported the alleged statements to law enforcement officials on December 27 and 30, 1996. Prior to his capital murder trial, Humphrey attempted, without success, to exclude his alleged statements to Reed. Reed testified at the suppression hearing and at Humphrey's capital murder trial, and in each instance, he implicated Humphrey in the murder. However, in a 2009 affidavit, Reed recanted his testimony, claiming that it was false and that Humphrey never confessed to him any involvement in Mrs. Phillips' murder. *See, e.g,* ECF No. 16-3 at 36-37 (July 9, 2009 Aff. of Patrick Reed). Reed claimed he gave the allegedly false testimony against Humphrey in order to obtain leniency on the grand larceny charges he was facing at the time, which could have resulted in a sentence of life imprisonment. *Id.*

In April 2010, the Mississippi Supreme Court granted Humphrey's application, finding in pertinent part:

Humphrey claims to have newly discovered evidence that a witness for the State

---

[1] Patrick Reed's name is spelled "Reed" and "Reid" throughout the state court record. The Court retains the spelling "Reed" except where the alternate spelling is contained in quoted portions of the record.

has recanted his trial testimony. If the affidavit presented by Humphrey was, in fact, executed by a witness who testified during Humphrey's trial, then the affidavit would meet the newly-discovered-evidence exception to the procedural bars found in Sections 99-39-5(2)(a)(i) and 99-39-27(9) of the Mississippi Code. After due consideration, the panel finds that Humphrey should be granted leave to file his Motion for Post-Conviction Collateral Relief in the Circuit Court of Tate County, Mississippi. The panel further finds that Humphrey should be granted an evidentiary hearing in the circuit court regarding the claims raised in his application.

ECF No. 15-10 (No. 2009-M-01991).

Humphrey, proceeding with the assistance of counsel, subsequently filed his application for post-conviction relief in Cause No. CV2010-207BT in the Circuit Court of Tate County in July 2010. *See* ECF No. 16-3 at 19-21. An evidentiary hearing was held in the trial court on April 14, 2011, and April 2, 2012.[2] *See* ECF No. 16-18 at 105; ECF No. 16-19 at 79. At the hearing, affidavits from Reed's stepfather, Dennis Carroll, in which Carroll claimed that Reed told him the statements that Reed had given to law enforcement were false, were considered by the court. *See* ECF No. 16-20 at 46-53 (trial court order); *see also* ECF No. 16-4 at 129-30 (Carroll's statements).

While Humphrey's state court proceedings were ongoing, he filed a successive habeas petition in this Court, *pro se*, which was transferred to the Fifth Circuit. *See* ECF No. 15-12 (No. 2:10-CV-37). On June 18, 2010, the Fifth Circuit entered an order authoring Humphrey to proceed with the successive petition, finding that he had "made a prima facie showing sufficient to warrant a fuller exploration by the district court[,]" but noting that the court "may dismiss the motion if it determines that his claims do not satisfy the successive standard. *See* § 2244(b)(4)."

---

[2] A continuance was granted to Humphrey, but two State witnesses were allowed to testify out of turn on April 14, 2011, due to travel arrangements. *See* ECF No. 16-18 at 105-06.

ECF No. 15-13 (No. 10-60213). On April 18, 2011, this Court dismissed Humphrey's successive petition without prejudice for failure to adequately exhaust his available State court remedies. ECF No. 15-14.

On July 30, 2012, the Tate County Circuit Court entered an order denying various relief to Humphrey, including his motion for post-conviction collateral relief. ECF No. 15-11. Following the denial of his post-conviction motion, Humphrey appealed to the Mississippi Supreme Court, which assigned the case to the Mississippi Court of Appeals. The Mississippi Court of Appeals affirmed the denial of Humphrey's motion. *Humphrey v. State*, 159 So. 3d 560 (Miss. Ct. App. 2014), *reh'g denied* August 5, 2014, *cert. denied*. November 6, 2014, *reh'g dismissed* March 17, 2015.

On April 21, 2015, Petitioner filed a *pro se* "Application for Leave to Proceed in the Trial Court," which was docketed in the Mississippi Supreme Court in Cause No. 2015-M-622. On July 29, 2015, the Mississippi Supreme Court denied Humphrey's petition as successive, barred by res judicata, and without arguable merit. *See* ECF No. 15-16.

On or about August 10, 2015, Petitioner filed a *pro se* petition for writ of habeas corpus in this cause raising six separate grounds for relief. Respondents complied with the Court's order to file an answer to the petition, and Humphrey has filed a reply to the answer. This matter is ripe for review.

**Legal Standard**

The Court's review of Petitioner's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Although the current

4

petition is successive, this Court may consider it in light of the permission granted by the Fifth Circuit for Humphrey to file a successive petition, as the original successive petition was dismissed without prejudice as unexhausted. *See In Re Gasery*, 116 F.3d 1051 (5th Cir. 1997).

The Fifth Circuit has explained the AEDPA's restriction on successive petitions establishes two gateways that must be passed before a court may address the merits of a successive petition:

> First, this court must determine whether the motion makes a prima facie showing that it can meet the requirements of § 2244(b)(2). This requires "a sufficient showing of possible merit to warrant a fuller exploration by the district court," and permission will be granted when it "appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition." *In re Morris*, 328 F.3d 739, 740 (5th Cir.2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469–70 (7th Cir.1997)). Second, before addressing the merits of the successive petition, the district court must independently determine whether the petition *actually satisfies* the stringent § 2244(b)(2) requirements. *Id*. at 741.

*In re Swearingen*, 556 F.3d 344, 347 (5th Cir. 2009) (emphasis in original).

The standards of 28 U.S.C. § 2244(b)(2) require:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

5

28 U.S.C.A. § 2244. Accordingly, the Court must determine whether Humphrey's petition satisfies § 2244(b)(2) before it considers the merits of any of his claims.

## Discussion

Patrick Reed's recantation is the primary factual predicate upon which this petition relies. Therefore, the Court must first determine whether "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence[.]" § 2244(b)(2)(B)(i). Respondents argue that it is unclear whether these allegations of recantation constitute new evidence, as Humphrey obtained an affidavit from Dennis Carroll, Reed's step-father, in 2004 where Carroll stated that Reed told Carroll in 1997 that his statements concerning Humphrey were false. *See, e.g.,* ECF No. 16-4 at 129-30. Therefore, Respondents argue, the circuit judge was correct in noting that it is questionable whether Humprehy's allegations regarding Reed's recantation can be considered new evidence, as he presumably recanted his 1997 recantation when he testified against Humphrey at trial in 1998. *See* ECF No. 15-11 at 6-7 (circuit court order).

Inasmuch as Patrick Reed did not swear an affidavit asserting the falsity of his trial testimony until 2009, the Court assumes that his affidavit constitutes "new evidence" previously undiscoverable with the exercise of due diligence. Accordingly, the Court considers whether the underlying facts of the claim would, if proved and viewed in the totality of all of the evidence, establish by clear and convincing evidence that no reasonable factfinder would have found Humphrey guilty of the offense but for the allegedly false testimony. *See* § 2244(b)(2)(B)(ii). In doing so, the Court notes that the presentation of new facts in a recanting affidavit are "properly viewed with great suspicion." *Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984); *see also*

*Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996).

At the 2011 evidentiary hearing, Deputy Randy Doss testified that while Reed and Humphrey were cellmates in the DeSoto County Jail, Reed approached Doss with information about Humphrey's alleged involvement in killing an elderly lady in Senatobia, Mississippi. ECF No. 16-18 at 108-09. Doss, who was not involved in the murder case, put Reed into contact with investigators who were working on the murder investigation. *Id*. at 109. This testimony is consistent with Doss' testimony at the suppression hearing held in 1997. *See* ECF No. 16-7 at 25-30.

Patrick Davis, a Secret Service Agent at the time of the evidentiary hearing, had been an investigator on the Phillips' case in 1996. He testified at the 2011 evidentiary hearing that he received a call from Doss that Reed wanted to speak with investigators about the Tate County murder. *See* ECF No. 16-18 at 119-151. Davis stated that he and his partner, Fred Perez, spoke to Reed and took statements from Reed on December 27 and December 30, 1996. *Id*. at 122 and 126. Davis testified that Reed was cooperative, that he did not ask for anything in exchange for speaking with them, and that he was not intimidated or coerced into speaking with them. *Id*. at 128. Davis testified similarly at the motion to suppress hearing in 1997. ECF No. 16-7 at 47-59.

At the pre-trial suppression hearing, Patrick Reed testified that he was in the DeSoto County Jail on grand larceny and burglary charges in December 1996 and was housed with Humphrey for a time. *See* ECF No. 16-7 at 59-61. At the hearing, he stated that he was not promised anything in exchange for his cooperation in Humphrey's case, that he did not ask for leniency on the charges he was facing in exchange for his cooperation, and that he was not threatened or coerced into making a statement. *Id*. at 64-69. He stated that Humphrey confessed

7

to killing an old lady by suffocating her. *Id*. at 78. At Humphrey's trial, Reed testified that Humphrey said that he broke into a lady's house, taped her up, got some money, and killed her by suffocating her. *See* ECF No. 16-11 at 110, 113.

At the evidentiary hearing held in 2012, however, Reed testified that he falsely implicated Humphrey because officers threatened that he would face a life sentence and also get charged with assaulting an officer if he did not testify against Humphrey. *See* ECF No. 16-19 at 89-92. Reed had two prior felony convictions and was facing a possible life sentence as an habitual offender if convicted of the grand larceny charge that was pending in 1996. *See id.* at 91. He stated that after first resisting cooperation, he agreed to testify against Humphrey after several officers, their identifies unknown, hit him and sprayed him with pepper spray. *Id*. at 91-92. Reed testified at the evidentiary hearing that Humphrey never confessed to him, and that his statements incriminating Humphrey were nothing more than what police told him to say. *See id.* at 92-95, 98.

On cross-examination at the 2012 hearing, Reed was questioned about the fact that the victim in the grand larceny case died before Reed pleaded guilty on that charge. ECF No. 16-19 at 104-07. Reed stated that he thought the victim died before he pleaded guilty, but he later stated that he could not remember the timing of the victim's death with his plea. *Id*. at 105-07. This contradicts Reed's testimony that he fabricated statements and testimony in exchange for leniency. In fact, at Humphrey's trial, the DeSoto County Assistant District Attorney ("ADA") testified that Reed received time served on the grand larceny charge, which could have carried a life sentence without parole, because the victim died before trial. *See* ECF No. 16-13 at 19-25. The ADA stated that the plea offer was made before Reed's first interview in the Phillips'

8

murder case. *Id*. at 24.

Also at the evidentiary hearing, Reed admitted he freely spoke to Detective Doss and stated that Doss told him that officers would be coming to interview him. *See* ECF No. 16-19 at 118-19. Reed first testified that the officers interviewing him on December 27, 1996 (to whom he gave a statement implicating Humphrey on that date) did not threaten him right away, but rather, that they threatened him "a couple of weeks" later. ECF No. 16-19 at 118-19. When questioned further about his statement implicating Humphrey before the alleged threats against Reed occurred, however, Reed stated that he "would think" that the threats occurred before he signed the statement implicating Humphrey in the murder. *Id*. at 120-21.

Therefore, Reed's testimony at the 2012 evidentiary hearing was inconsistent not only with his earlier statements and testimony at trial, but it was also contradictory at times within the hearing itself. In fact, the trial judge noted in his order that Reed's recollection at the post-conviction hearing was not consistent, and the court determined that it was "not satisfied regarding the truthfulness of Reed's current version of events." ECF No. 15-11 at 6-7.

On appeal, the Mississippi Court of Appeals agreed, noting:

Deputy Doss and Special Agent Davis's testimony at the hearing was consistent with their testimony at Humphrey's trial. Special Agent Davis testified that he neither threatened nor physically coerced Reid in any way. Reid's testimony at the hearing—which, as we note above, should be regarded with suspicion—was inconsistent with his testimony on two previous occasions. At the hearing, Reid testified law enforcement promised to get him out of jail if he testified against Humphrey. However, at a pretrial suppression hearing and during Humphrey's trial, Reid testified that he had not been promised anything in return for his testimony. During the hearing, Reid also testified that he was threatened and beaten by law enforcement in order to coerce him to testify against Humphrey and that law enforcement told him what to say. However, on cross-examination, Reid stated that he was not

9

>  threatened until two weeks after he gave the statements to Special
> Agent Davis and Officer Perez implicating Humphrey in the
> murder. Furthermore, Reid could not identify who beat him or
> when the alleged beatings occurred. Nor could Reid remember
> which law enforcement officer threatened him. Upon reviewing the
> record, we find nothing to support Humphrey's argument that the
> trial court abused its discretion in assessing the credibility of Reid's
> testimony.

*Humphrey v. State*, 159 So.3d at 564-565; *see also* ECF No. 15-15. The Court finds that the record in this cause supports the trial court and appellate court's holdings that Reed's recantation was not credible.

However, the Court also determines that the record demonstrates that the jury had sufficient evidence upon which to convict Humphrey even without Reed's testimony. The Court agrees with the trial judge's assessment that "[t]he jury's verdict could not have solely depended on Reed's testimony regarding Humphrey's statements regarding his involvement in the crime." ECF No. 15-11 at 7. The Mississippi Court of Appeals set forth the evidence against Humphrey as follows:

> During Humphrey's trial, other testimony and evidence was presented establishing Humphrey's involvement in the crime.
>
> Jean Epps, who was employed by Phillips as a caregiver, testified that Humphrey visited her house twice on the night prior to the murder. During the first visit, Humphrey asked Epps about money Phillips allegedly kept in the house. According to Epps's testimony, Humphrey told Epps that "all he wanted was the money .... He wasn't going to do [anything] but tie [Phillips] up."
>
> Reginald Brooks testified that Humphrey discussed his plans to burglarize the Phillips house with him on several occasions in the days and weeks prior to Phillips's murder in an attempt to enlist Brooks's participation. Brooks further testified that in the early morning hours of October 31, 1996, the day of the burglary and murder, while in the car with Humphrey and Chris Marshal, Brooks observed them making preparations for the burglary. Finally, Humphrey's fingerprints were found at the scene of the burglary.

> We find that there was sufficient evidence presented at the trial to support the jury's verdict and that Humphrey has failed to show that a new trial would produce a different result. Accordingly, we find that the trial court acted within its discretion in denying Humphrey's PCR motion.

*Humphrey v. State*, 159 So. 3d 560, 564 65 (Miss. Ct. App.), *reh'g denied* (Aug. 5, 2014), *reh'g dismissed* (Mar. 17, 2015), *cert. denied*, 150 So. 3d 708 (Miss. 2014); *see also* ECF No. 15-15. The record supports these findings. Accordingly, the Court finds that Humphrey cannot establish by clear and convincing evidence that, absent Reed's testimony of the jailhouse confession, no reasonable juror could have convicted Humphrey of capital murder. As such, Humphrey fails to satisfy 28 U.S.C. § 2244(b)(2)(B)(ii). Therefore, it is unnecessary to reach the merits of Humphrey's claims.

Because Humphrey's successive petition fails to satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B), it must be dismissed. *See* 28U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.").

## Certificate of Appealability

Humphrey must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253. A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to be entitled to a COA for a claims rejected on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least,

that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Applying the *Slack* standard, the Court concludes that a COA should be denied in this case.

**Conclusion**

For the reasons set forth herein, the Court determines that Humphrey has failed to satisfy the requirements of § 2244(b)(2), and his petition is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any pending motions are **DISMISSED** as moot. A final judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 24th day of March, 2016.

                                           /s/ **Sharion Aycock**
                                           **U.S. DISTRICT JUDGE**